KOBEL *v.* CITY OF DETROIT.

MUNICIPAL CORPORATIONS — OFFICERS — COMPENSATION — DETROIT
CHARTER.

  Under section 250 of the charter of Detroit (1904), an assistant engineer, who has received the compensation fixed in the estimate, cannot recover for extra compensation, based on his having worked over eight hours per day, though an ordinance declares that eight hours shall constitute a day's work.[1]

Error to Wayne; Hosmer, J. Submitted October 13, 1905. (Docket No. 65.) Decided November 21, 1905.

Assumpsit by Rudolph Kobel against the city of Detroit for work and labor. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*William F. & Frank W. Atkinson,* for appellant.

*P. J. M. Hally* (*Timothy E. Tarsney,* of counsel), for appellee.

BLAIR, J. Plaintiff brought this action to recover $196, claimed to be due him in consequence of his having worked 11 hours per day instead of 8 hours per day, the legal extent of a day's work under the city ordinance. Plaintiff was employed by the common council to work as an assistant engineer at the city hall from October 1, 1900, to May 15, 1901. The estimates for that fiscal year were as follows:

Engineer city hall _____ $1,200 00
One assistant, 365 days, at $2.75 per day _____ 1,003 75
One assistant, Oct. 1st to May 15th, 227 days, at
    $2.75 per day _____ 624 25
One night engineer, Nov. 1st to May 1st, 156
    nights, at $2.00 per night _____ 312 00

---

[1] As to right of servant to extra compensation for labor in excess of time limited by statute or ordinance, see note to *People* v. *Orange County Road Construction Co.* (N. Y.), 65 L. R. A. 46..

Plaintiff testified in his own behalf:

" I was employed by the common council of the city of Detroit to work as assistant engineer of the city hall from October 1, 1900, to May 15, 1901. I was notified of my appointment by Alderman McGraw. He told me I was to be paid $2.75 per day, and that I was to work 8 hours per day. I went to work on October 1st, and worked every day until May 15, 1901. I worked 11 hours per day, by direction of Chief Engineer Leadbeater. All my work was done under his direction. I asked him to put my extra time on the pay roll. He said he could not, but that I would get my pay for the extra time from the comptroller. It was necessary for the men to work 11 hours per day to do the work. On signing the pay roll, I made a demand for pay for the extra time. I made this demand several times when I signed the pay roll. At no time did I intend to relinquish any claim I had against the city for pay for extra time. * * *

" I was paid every two weeks. I signed the pay roll calling for $2.75 per day. I did this at the end of each two weeks during the time I was working."

Frederick Leadbeater testified as follows:

" I am chief engineer of the city hall of the city of Detroit. I was such during the years 1900 and 1901. Mr. Kobel worked under me from October 1, 1900, to May 15, 1901. He worked 11 hours per day. His work was all done under my direction, such as running the engine, tending the fires, etc. It was impossible to do the work in 8-hour shifts. Mr. Kobel spoke to me about putting the extra time on the pay roll. I told him that I made out the pay roll for the 8 hours, and that he would get his pay for the extra time from the comptroller; that I had nothing to do with that. I understood that 8 hours was a day's work, and that he would be paid for the extra time. Since that time the council has given me an extra man, and the men now work 8 hours per day."

Section 1 of chapter 47 of the Revised Ordinances of the City of Detroit reads as follows:

" That hereafter 8 hours shall constitute a day's work for all laborers, workmen and mechanics who may be employed by or in behalf of the city of Detroit, or any of its authorized boards or officers, or who may be em-

ployed by contractors or subcontractors in work done or executed under contracts with the said city of Detroit or its various authorized boards or officers."

Section 250 of the charter (1904) provides as follows, viz. :

"The common council shall not, by warrant, draft, or order on the treasury, or by any form of contract, create any liability or expense, for the payment of which any particular fund is constituted as above, to a greater amount in the aggregate, for one year, than the amount of moneys raised for and paid into such fund for the year. All warrants, drafts, orders and contracts payable under this act, out of any particular fund, and issued or made after the moneys raised for and paid into such fund shall have been exhausted by payment therefrom, or liabilities created and to be paid out of said fund, shall be absolutely void as against the corporation."

Section 258 of the same compilation provides for the disposition of the surplus that should remain in any fund.

The circuit judge directed a verdict for the defendant, saying:

"I do not see that there is any case to be argued here. This is not like the *Park Board Case;* not like the *O'Boyle Case,* 131 Mich. 15. In the *O'Boyle Case* the common council and board of estimates made a lump sum to the park board for certain purposes. The question whether Mr. O'Boyle in that case was to receive a dollar and a half for eight hours' work or a dollar and a half for ten hours' work was never considered by either party, and when the park board established an eight-hour rule in that case, he was directed by the man that employed him to keep his overtime, and return it to the park board, and it presented a very different case from the case at bar. Now, in the case at bar, when the estimates for each of those years went to the common council, they fixed two dollars seventy-five for the services for the day—for 227 days, the estimated time of two assistant engineers—and when the board of estimates passed upon that sum, and sent that back as the estimate for the year, they deprived the common council of the city of Detroit, directly or by implication, from in any manner exceeding that sum for that purpose; nor would the common council, under ordinary cir-

cumstances—certainly, I may not anticipate every case, but under ordinary circumstances—nor would they be authorized to employ another engineer for that purpose. Now, under these circumstances, it does not seem to me that there is the slightest cause of action presented here, nor do I think that, under the circumstances of the case, any protest made, if there was any protest made by Mr. Kobel, would have been binding. He was appointed for the time, and he signed his pay roll without bringing the matter at least to the attention of the common council or of the comptroller, or any of the officers authorized to pay."

In our opinion, the ruling of the trial judge was clearly correct, and we adopt his opinion as above quoted. The cases of *Coit* v. *City of Grand Rapids*, 115 Mich. 498, and *O'Boyle* v. *City of Detroit*, 131 Mich. 15, relied upon by plaintiff's counsel, are not in point.

The judgment is affirmed.

MOORE, C. J., and McALVAY, GRANT, and OSTRANDER, JJ., concurred.