CARNEY *v.* WHELAN.

1. OFFICERS—POLICE— CHARACTER OF TENURE — DETROIT POLICE DEPARTMENT.

From a reading of Act No. 416, Local Acts 1901, it appears that the patrolmen of the Detroit police force, appointed under the act, are officers, and not mere employés, and their term of office is not less than one year.

2. SAME—SALARY.

Where the commissioner of police of the city of Detroit transmitted his estimate to the city controller providing for patrolmen at the rate of $1,000 per year, and the board of estimates reduced the allowance to $960 per year, which sum the council appropriated, the salary of patrolmen of the city was thereby fixed at $960 per year.

3. SAME—FURLOUGHS.

By providing in section 34*a* of Act No. 416, Local Acts 1901, that "the leave of absence" of policemen should be a furlough of 20 days, the legislature recognized an existing custom of the Detroit police department to grant an annual leave of absence of 10 days with pay, and thereby extended such leave to 20 days with pay.

Certiorari to Wayne; Hosmer, J. Submitted October 9, 1906. (Calendar No. 21,796.) Decided January 4, 1907.

Mandamus by Henry Carney to compel John B. Whelan and Charles Nichols, commissioner and secretary of police, to credit relator upon the pay rolls of the department with a sum deducted from his salary by reason of absence from duty with leave. There was an order granting the writ, and respondents bring certiorari. Affirmed.

*Alex. J. Groesbeck* and *Guy A. Miller*, for relator.

*Fred H. Warren*, for respondents.

BLAIR, J. Relator applied for a writ of mandamus to

compel the respondents, who were, respectively, commissioner and secretary of police of the city of Detroit, to credit him upon the pay rolls of the department with the sum of $26.70, which had been deducted from his pay by reason of his absence from duty with leave for a period of 20 days. The application was granted by the circuit court, and respondents have removed the proceedings to this court by writ of certiorari.

Relator has served continuously as a patrolman on the police force of the city of Detroit since October 29, 1886. Prior to 1905 it had been the custom of the department to allow 10 days' leave of absence each year, with full pay, to such officers as had not, by reason of sickness or other cause, been absent that length of time. In 1905 an act was passed by the legislature and approved by the governor on April 13, 1905 (Act No. 470, Local Acts 1905), amending the act providing a police government for the city by adding a new section, as follows:

"Sec. 34a. The leave of absence of each and every policeman and officer in said police department shall be a furlough of twenty days in each and every year: *Provided,* At least ten of the days of such furlough shall be consecutive."

In July, 1905, respondent Whelan, as commissioner of police, issued a general order to the department that in granting leaves of absence or furloughs under the amendment of 1905 only 10 days would be granted with pay. In October relator applied for and was granted a furlough, and was absent 20 days, comprising the entire period of his absence for the year.

Rules 14 and 26 of the rules and regulations of the department are as follows:

"Rule 14. No member of the police force should leave the department or be absent from duty without permission from the superintendent.

"Rule 26. Absence from duty of any member of the police force, whether with or without leave, shall be followed by forfeiture of pay for time absent, unless otherwise ordered by the commissioner of police."

Relator contends that the amendment of 1905 conferred upon him the right to a furlough of 20 days, with full pay. Respondents insist that the amendment confers no right to pay, but leaves that subject to the discretion of the commissioner, which was lawfully exercised by the general order allowing 10 days' pay.

The act to establish a police government for the city of Detroit, approved April 17, 1871, was radically amended at the session of the legislature of 1901 by Act No. 416 of the Local Acts of that session.

By section 1 all powers and duties connected with and incident to the police government and discipline of the city were vested in one commissioner of police, a superintendent, and other officers and patrolmen. The common council were authorized to appoint a commissioner of police, who should succeed to all the rights, privileges, and prerogatives lawfully pertaining to the then existing board of metropolitan police.

By section 5 the commissioner was empowered to appoint a superintendent, a deputy superintendent, a captain for each 30 patrolmen, one or more officers to act as detectives, one sergeant of police for each 50 patrolmen, an attorney, surgeon, one or more roundsmen, door man, janitors, and such patrolmen as may be deemed necessary or for whom compensation may be provided by the taxes authorized to be levied in the annual tax levy of said city for the support of said department.

"Said commissioner shall also have power, for cause assigned, and on a public hearing and on due notice, according to rules which shall be promulgated, to remove and suspend from office or for a definite time to deprive of pay, any member of such police force: *Provided*, That the superintendent, deputy superintendent, either of the detectives, attorney, surgeon, secretary and property clerk may be dismissed at any time at pleasure. Said commissioner shall also make rules and regulations for the discipline and government of said force, and shall

cause the same to be published, and shall also make and promulgate general and special orders to said force."

By section 7:

"Said commissioner shall assume and exercise the entire control of the police force of said city, and shall possess full power and authority over the organization, government, appointments and discipline within said city."

By section 9 it is provided:

"That no person, except the superintendent, deputy superintendent, detectives, the attorney, the surgeon, secretary and property clerk, shall be removed from said force, except upon written charges preferred against him to the commissioner of police, and after opportunity of being heard in his defense. * * * Said commissioner of police may also at any time, in his discretion, and without charges or trial, reduce any officer from his rank, grade and pay, to a lower rank and pay, and either permanently or temporarily promote any officer to his position without regard to the relative rank or grade of such other officer. * * * The commissioner of police shall receive an annual salary payable from the treasury of the city of Detroit, in monthly installments, of the sum of $5,000 per annum. All other salaries and compensations to the officers, appointees and employés of the department shall be prescribed and determined by the commissioner of police and shall be paid semi-monthly to the persons entitled thereto. No member of the police force shall receive or share in, under any pretenses whatever, any present, fee, gift or emolument for police services, other than the regular salary and pay provided by this section, except by the consent of said commissioner of police," etc.

Section 10 provides for the making of charges against members of the force and their trial.

By section 22 it is made the duty of the commissioner:

"To prepare and submit to the city controller, on or before the fifteenth day of February in each year, an estimate of the whole cost and expense of providing for and maintaining the police department of the said city through the next ensuing fiscal year, *which estimate shall, so far as practicable, be in detail,* and shall be made by the

controller before the common council at the annual esti-
mate, such estimate, or so much thereof as the council
shall approve, shall be submitted by the common council
to the board of estimates of said city, and so much of the
total amount thereof as shall be approved by the board of
estimates shall be provided for in the general tax assess-
ment by levy to be made on said city and collected with
the other city taxes; said money when collected shall be
paid in to the city treasurer, and shall be styled the police
fund.   *   *   *   The amount of the estimate not approved
by the council or board of estimates shall be deducted
from the total amount thereof."

, By section 26 the commissioner may require each mem-
ber of the force to take the constitutional oath of office.

By section 31 it is provided:

"If said commissioner or any member of the police
force *during his term of office,* accept or hold any office
elective by the people or any other appointive office, or
shall, *during his term of office,* be publicly nominated
for any office, elective by the people, and shall not, within
ten days succeeding the same, publicly decline the said nom-
ination or appointment, he shall, in either case, be deemed
thereby to have resigned his commission and to have
*vacated his office.*"

By section 33 it is provided that the commissioner of
police shall be a member of the board of estimates of said
city.

It seems clear from the reading of the statute that the
legislature contemplated that the patrolmen appointed
under the act should be officers and not employés, and
that they had provided for a term of office of at least one
year.   While very extensive powers are given to the
commissioner, after he has appointed a patrolman in a
given year, he has no authority to remove such patrolman,
except, perhaps, in case of physical or mental incapacity
to discharge his duties, unless after a hearing upon
charges regularly preferred and reasonable opportunity to
the patrolman complained of to be heard in his defense.
The commissioner has no power to reduce or increase the
salary of a patrolman as such, and, although he may re-

duce his grade and pay, until such reduction takes place, the patrolman is entitled to the compensation originally fixed by the commissioner.

In the case before us the commissioner transmitted to the city controller his estimates for said department for the fiscal year 1905, and among the estimates so transmitted was an "item for "356 patrolmen, at $1,000, $356,000." This last-named item was allowed by the common council, but was reduced by the board of estimates to " 356 patrolmen, at $960, $341,760," and, as so reduced, was returned to the common council, which latter body caused said sum of $341,760 to be assessed, levied, and collected by general taxation and placed at the disposal of the commissioner of police. It seems clear that when the commissioner, in accordance, with the requirement of the statute, transmitted in detail his estimates for his department, including the item of 356 patrolmen, at $1,000, this constituted a fixing on his part of the salary of the patrolmen at the sum indicated. The board of estimates, under the act in question and its general powers, had authority to disallow any items or parts of items referred to it, and, having disallowed the part of the item of $1,000 for salary and fixed it at $960, the salary of the patrolmen for the ensuing fiscal year was fixed at the sum of $960. *Attorney General* v. *City of Detroit*, 113 Mich. 494.

It seems to us to result that, the act having provided for a term of office of at least one year and for a salary covering the term of one year and that the tenure of the office could only be terminated by charges and a hearing, it was the intention of the legislature that the term of office for which the compensation was to be paid should be the time prescribed in the act for service, which was one year, with a furlough of 20 days. The wording of the amendment of 1905 is also significant of this intention. It had been the custom of the department for many years to allow officers whose records were favorable a leave of absence of 10 days, with pay. It is reasonable to suppose

that the Detroit delegation in the legislature was familiar with this custom of so important a department, and that the amendment was framed with reference, in some degree at least, to such custom. The amendment itself would seem to indicate this. It does not provide apparently for something which had not theretofore existed, but for an amplification of a provision already in force. Instead of providing that there shall be a furlough or leave of absence granted, it provides for the period of "the leave of absence," as though such leave of absence were recognized as already provided for. Inasmuch as the leave of absence by custom was accompanied when granted by full pay during its continuance, the conclusion seems reasonable that the legislature intended that the longer furlough which it was providing for should also be accompanied by pay. We are of the opinion, therefore, that the circuit court did not err in construing the statute to provide for a furlough with full pay.

The judgment is affirmed.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.