BURTON v. CITY OF DETROIT.

1. ELECTIONS—CITIES—CHARTER AMENDMENTS—BALLOT.
   It was sufficient, in an election involving an amendment to the Detroit charter, to present to the voters a ballot reading as follows: "Do you favor authorizing the common council to fix the compensation of certain elective and appointive officers of the city of Detroit within certain limitations; also to fix the compensation of the subordinates to such officials. Yes... No..." The ballot apprised the electors of the proposed change in the charter giving the council authority to fix within maximum limits the salaries of enumerated officers and subordinates and in the absence of any showing that any of the electors were misled as to the contents of the amendment which was printed in full in the official paper of the city, the election was not invalidated.

2. Municipal Corporations—Raise of Salaries.

The common council of Detroit has power to fix salaries of employees and city officials without interference from the board of estimates, and the charter amendment of 1914 authorizing the council to fix certain salaries, etc., confers power to regulate them within the maximum limits specified in the amendment.

3. Same—Powers—Salaries.

An ordinance entitled "An act to fix the compensation of certain officers and employees," and purporting to provide for a stated compensation of various officers and employees, amounts to a fixing of salaries by law.

4. Constitutional Law — Cities — Detroit Charter — Courts — Salary.

Fixing the salary of the judge of the Detroit recorder's court does not interfere with the jurisdiction of the court relating to State matters, where the municipal council merely added compensation to that which was already received by law.

5. Same—Ordinances—Detroit Charter.

But an ordinance purporting to fix the salary of police justices and clerk of the police court was invalid, as these salaries are fixed by the city charter. The salaries of assistant clerks could be so determined.

6. Same—Corporations—Museum of Art.

Any attempt to fix salaries of employees and officers of the Detroit Museum of Art is invalid under *Detroit Museum of Art* v. *Engel*, 187 Mich. 432 (153 N. W. 700), holding the same a private use to which public funds may not be devoted in view of the provisions of Art x, § 12, of the Constitution.

7. Same—Public Officers—Increase of Salaries.

Article xvi, § 3, of the State Constitution, does not prohibit the increase of salaries of officers that have no fixed term of office, but are appointed for an indefinite tenure. Officer and term should be considered together.

8. Same—Assessors.

Neither the constitutional inhibition, nor that of Act No. 279, Pub. Acts 1909 (1 Comp. Laws 1915; § 3324 *et seq.*), affected the members of the Detroit board of assessors who resigned when the charter was amended, and who re-

ceived appointments for an indefinite term after the amendment took effect.

A'ppeal from Wayne; Hosmer, Hally, and Codd, JJ. Submitted January 17, 1916. (Docket No. 52.) Decided March 2, 1916.

Bill by Clarence M. Burton against the city of Detroit, and the civil service commission of said city, to enjoin defendants from paying increases in salaries to certain city officials. From the decree of the court both complainant and defendants appeal. Modified and affirmed.

*Oxtoby & Wilkinson,* for complainant.

*Walter Barlow* and *Richard I. Lawson,* for defendants.

On November 3, 1914, the electors of the city of Detroit, acting under the authority of the home rule act, so called (Act No. 279, Pub. Acts 1909, as amended by Act No. 203, Pub. Acts 1911, and Act No. 5, Pub. Acts 1913 [1 Comp. Laws 1915, § 3324 *et seq.*]), adopted the following amendment to the city charter:

"A bill to amend an act entitled 'An act to provide a charter for the city of Detroit and to repeal all acts and parts of acts in conflict therewith,' approved June 7, 1883, as amended, by adding a new chapter thereto for the purpose of giving power to the common council to fix the compensation of certain officials of the city of Detroit and their subordinates.

"The people of the State of Michigan and the people of the city of Detroit enact:

"SECTION 1. Hereafter the common council shall have the power to fix the compensation of the officers of the city of Detroit as follows, to wit: The mayor's compensation may be fixed at a sum not to exceed $8,000 per annum; corporation counsel's compensation at a sum not to exceed $7,500 per annum; compensation of commissioner of department of 'public works

at a sum not to exceed $7,500 per annum; city clerk's compensation at a sum not to exceed $5,000 per annum; city treasurer's compensation at a sum not to exceed $5,000 per annum; city controller's compensation at a sum not to exceed $5,000 per annum; the compensation of the commissioner of police at a sum not to exceed $5,000 per annum; the compensation of the commissioner of parks and boulevards at a sum not to exceed $5,000 per annum; the recorder and associate judge of the recorder's court of the city of Detroit may each be compensated by the city in a sum not to exceed $3,500 per annum:

"*Provided,* that no official shall have his compensation increased during the term for which he was elected or appointed. All subordinates to such officials and all other appointive officers shall receive such compensation as the common council may from time to time prescribe, but in no case shall the compensation of subordinates be increased during the city's fiscal year.

"SEC. 2. All acts and parts of acts in conflict herewith are hereby repealed."

The compensation of certain of these officials had been theretofore fixed by the city charter.

A new chapter to the city charter providing for a civil service commission for the city having been adopted on April 7, 1913, on November 3, 1914, section 1 of said chapter was amended by the electors so as to empower the mayor of the city to appoint four electors of the city to constitute the commission, one for the term of one year, one for the term of two years, one for the term of three years, and one for the term of four years, and to provide for the annual appointment of the successors of each of said commissioners whose terms next expired for the full term of four years. And it was further provided that each of said commissioners shall receive an annual salary of not more than $3,000, as the same may be determined by the common council of said city.

On March 30, 1915, ordinances were introduced in the common council fixing the compensations of certain

officers, clerks, and employees of the city, and were duly passed on April 6, 1915, approved April 7, 1915, and ordered to take effect July 1, 1915, the beginning of the fiscal year of the city, which ends June 30, 1916. These ordinances are known as Ordinances 208A to 232A, inclusive, and are each entitled "An act to fix the compensation of certain officers, clerks, and employees of the city of Detroit," and respectively purported to fix the compensation of the officers, clerks, and employees of the (1) police department of the city of Detroit (208A) ; (2) department of public works (209A) ; (3) recorder's court (210A) ; (4) city engineer's office (211A) ; (5) mayor's office (212A) ; (6) controller's office (213A) ; (7) city treasurer's office (214A) ; (8) corporation counsel's office (215A) ; (9) department of buildings (216A) ; (10) police court (217A) ; (11) bureau of public welfare (218A) ; (12) board of assessors (219A) ; (13) board of health (220A) ; (14) board of fire commissioners (221A) ; (15) boiler inspector's office and bureau of inflammable liquids (222A) ; (16) recreation commission (223A) ; (17) board of library commissioners (224A) ; (18) board of civil service commissioners (225A) ; (19) city clerk's office (226A) ; (20) department of parks and boulevards (227A) ; (21) public lighting commission (228A) ; (22) board of poor commissioners (229A) ; (23) Detroit Museum of Art (230A) ; (24) board of education (231A) ; (25) board of street railway commissioners (232A).

The common council, in fixing the estimates for the fiscal year ending June 30, 1916, appropriated the necessary sums of money with which to pay the different salaries fixed and determined in and by the said several ordinances. The board of estimates of the city, in passing on the general budget of the city for the fiscal year ending June 30, 1916, cut out a large number of salaries altogether as fixed and determined in and by

the said several ordinances, and reduced many others. The common council attempted to restore the salary increases and appointments disallowed by the board of estimates, and on May 4, 1915, passed a resolution to that effect. Mr. Harry J. Dingeman was appointed corporation counsel of said city on April 27, 1915, and holds his position, under the present charter as amended, at the will of the mayor. For at the election in the fall of 1914 another amendment to the charter was adopted which went into effect November 14, 1914, which reads as follows:

SECTION 1. Hereafter the mayor shall be vested with power, and without the confirmation of the common council, to appoint all the appointive officers of the city of Detroit and members of its boards, commissions, and departments now established or hereafter created, and said officers (except the members of the civil service commission) shall hold their offices at the pleasure of the mayor and be removable at his will without cause assigned."

At the time the bill of complaint in this cause was filed Mr. Dingeman was receiving from the city his salary at the rate of $7,500 per annum, as fixed by Ordinance 167A, instead of $5,000, as fixed by the charter before the amendment. Complainant, who is the owner of real estate in the city of Detroit subject to taxation of the value of $50,000 and upwards, undertook by this proceeding to enjoin the payment and disbursement by the city of the excess amounts, which he claimed were not authorized by law, for the payment of unwarranted and unlawful salary increases, and alleges that, if the funds of the city on hand and available for lawful city purposes were used for other and unlawful objects, it would make necessary the raising by taxes of an amount equal to such unlawful payments, which would otherwise be avoided, that his land would become liable by assessment to pay its pro-

portion of such salary increases, be threatened with sale, and be liable to a lien for such taxes, and that such an assessment would be a cloud on the title of his real estate; the amount involved being in excess of $100.

The case was heard before three of the judges of the Wayne circuit bench, who joined in upholding the validity of the charter amendment and the right of the council to fix independently, without any approval thereof by the board of estimates, the salaries of the officials particularly referred to in the charter amendment and their subordinates, but denied the power of the council to so fix the salaries of officers and their subordinates not particularly referred to in the charter amendment; their opinion being as follows:

"We believe that the charter amendment of November, 1914, was legally adopted and confers upon the common council the authority to fix certain salaries, and that the subsequent action of the common council fixing the salaries of said officials and their subordinates by ordinance is a valid exercise of said power, and precludes the necessity of any action of the board of estimates in reference thereto. The exercise of such power, however, is only applicable to the officials enumerated in this charter amendment, and as to officials and their subordinates not enumerated therein the provisions of the charter relative to the concurrent action of the board of estimates still prevails, and has not been altered by this charter amendment where it is within the power of the common council and the board of estimates to fix salaries."

From a decree in accordance with the opinion of the court, both complainant and defendants have appealed. The questions now before us are thus stated by complainant's counsel in their brief:

"(1) The validity of the charter amendment submitted to and apparently adopted by the electors of the city of Detroit on November 3, 1914, and particularly the sufficiency of the manner in which it was submitted on the ballot to the electors.

"(2) The power of the common council, under the charter amendment, if valid, to increase the salary of a new incumbent of the office of corporation counsel during the current fiscal year ending June 30, 1915.

"(3) The proper construction of the charter amendment of November 3, 1914 (if valid) in connection with the other provisions of the city charter, and particularly the power of the common council to fix the salaries of the officers, clerks, and employees particularly referred to in said charter amendment, independently of the approval of the board of estimates.

"(4) The power of the common council to fix the salaries of officers, clerks, and employees, independently of the approval of the board of estimates, under the provisions of said charter amendment that 'all subordinates of such officials and all other appointive officers shall receive such compensation as the common council may from time to time prescribe.'

"(5) The power of the common council to fix the salaries of the judges of the recorder's court.

"(6) The power of the common council to fix the salaries of the justices and clerk of the police court.

"(7) The power of the common council to fix the compensation of the officers and employees of the Museum of Art.

"(8) The power of the common council to fix the compensation of the officers and employees of the board of education.

"(9) The power of the common council to fix the compensation of the officers and employees of the board of library commissioners.

"(10) The power of the common council to fix the compensation of the officers and employees of the board of health.

"(11) The validity of the resolution of the common council introduced and passed without unanimous consent on May 4, 1915, restoring salary increases disapproved by the board of estimates, and directing the assessment levy for 1915.

"(12) Whether the charter amendment, if valid, expressly or by implication took away from the board of estimates power to refuse to allow appropriations for the payment of the salaries of employees, where the appointment of such employees was disapproved of, or

whether the charter amendment gave the council the exclusive power, not only to fix salaries, but also to create positions and determine the number of appointments to any class of positions."

KUHN, J. (*after stating the facts*). The real question in controversy is whether or not the salaries of the Detroit city officials, their subordinates, and other city employees, which have been fixed by the ordinances above enumerated, duly adopted by the common council of the city, can be reduced or cut out altogether by the board of estimates of the city.

Counsel for complainant challenge the sufficiency of the manner in which the charter amendment was submitted on the ballot to the electors on November 3, 1914. The form in which this amendment was submitted was determined by a resolution of the council, and was as follows:

"Do you favor authorizing the common council to fix the compensation of certain elective and appointive officers of the city of Detroit within certain limitations; also to fix the compensation of the subordinates to such officials?

"YES......
"NO......"

It is urged that this did not fairly apprise the electors of the purpose and effect of the proposed amendment. It is not shown that any electors were, in fact, misled by the form of the amendment, and it appears that the proposed charter amendment was printed in the official newspaper of the city, that 10,000 copies thereof were printed in pamphlet form and many of them distributed by the city clerk among the electors of the city, and that the question of the adoption or the rejection of the amendment was discussed in the public newspapers generally. We are of the opinion that the form of the ballot was sufficient to fairly apprise the electors of the purpose and effect of the proposed amendment.

The charter of the city of Detroit provides:

"The legislative power of the city is vested in a common council, to be composed of the aldermen elected from each ward of the city." Section 137, Charter of City of Detroit, 1904.

Section 21 of article 8 of the Constitution of the State provides:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

Section 166 of the Detroit charter (Charter of City of Detroit, 1904), with reference to the powers of the common council, provides in part as follows:

"It may also fix and regulate the compensation of all officers elected or appointed under or by virtue of any act relating to said city, except as may be otherwise provided."

Previous to the session of the legislature in 1901 there was no limitation imposed upon the power of the board of estimates to pass upon any item in the budget submitted to it by the common council. But in that year the legislature, by Act No. 474, Local Acts 1901, amended the section of the charter with reference thereto, and again amended it in 1905 by Local Act No. 617 so as to have the charter read as follows:

"SECTION 1. The commissioner of public works, the commissioner of police, the commissioner of parks and boulevards, board of fire commissioners of the city of Detroit, the board of health and the board of education of the city of Detroit shall respectively transmit to the city comptroller, on or before the first Tuesday of February in each year, their estimates of the amount of money required for their respective departments for the ensuing fiscal year; and the city comptroller, on or before the first Tuesday in March, shall transmit the same to the common council, together with his estimate

of the amount of money required to be raised for the purposes of each of the funds constituted by this charter:   *Provided,* that he may at any time before the expiration of the time within which the common council is required to act upon said estimates, transmit to the common council supplemental estimates, which, by mistake or otherwise, may have been omitted in the estimates aforesaid.   The common council shall consider such estimates and may revise or alter said estimates, but not so as to exceed the aggregate amount authorized by law to be raised by taxation, and when such revision shall be completed and adopted, they shall transmit such revised estimates to the board of estimates on or before the twenty-eighth day of March: *Provided,* it shall not be required to submit to the board of estimates so much of the revised estimates as shall be required to raise money for the payment of debts or liabilities theretofore duly and lawfully contracted, or for moneys which may be required for the payment of salaries fixed by law or otherwise required by law to be levied.   Said estimates so transmitted by the common council shall be considered by the board of estimates, and they shall report the amounts of money which, for the purposes of the several funds and for the several departments aforesaid, they shall have consented to be raised by taxation.   And no money shall be raised by taxation for any of said departments or for any of said funds, unless by consent of said board, excepting for the payment of debts and liabilities theretofore lawfully contracted, or for the payment of salaries fixed by law, or otherwise required by law to be levied.   It shall be the duty of the controller and the said commissioners and boards to furnish to the common council and to the board of estimates such information as may be necessary for the proper consideration of said estimates."

It will be noticed that the amendment now provides that the common council need not submit to the board of estimates so much of the revised estimates as shall be required to raise moneys for the payment of salaries fixed by law.   It does not seem, in our opinion, that there can be any doubt that, under the provisions of the charter itself (section 166, Charter of City of De-

troit, 1904), the "home rule" clause of the Constitution (section 21, art. 8), and the home rule act (Act No. 279, Pub. Acts 1909, as amended [1 Comp. Laws 1915, § 3304 *et seq.*]), the common council had a right to legislate as to the salaries of its officers, their subordinates and employees. It is also clear that before the charter amendment of 1914 the common council could not increase the salaries of its officers which were fixed by the charter. The charter amendment, however, made it possible for the common council to legislate with reference to the salaries of certain of these officers, within certain limitations. But for these limitations in the charter amendment the council, as has been said, had the full authority to legislate upon the question of salaries of its officers, their subordinates or employees. If the electors of the city of Detroit so desire, they may extend the limitations on this power which the council now possesses, and further restrict the power of the council to act with reference to salaries, as was done by the amendment of 1914. Previous to 1901 the board of estimates undoubtedly had the power to review action of the council upon salaries, as upon other expenditures; but the legislature, by the proviso above set forth in the amendment, took away from the board of estimates the authority to interfere with the raising of moneys to pay salaries which had been fixed by law.

With the legislative power delegated to it, the action of the common council, in passing the ordinances in question, in our opinion, clearly amounted to and was a fixing of the salaries by law.

Mr. Dillon, in his work on Municipal Corporations (5th Ed.), § 573, says:

"Although the proposition that the legislature of a State is alone competent to make laws is true, yet it is also settled that it is competent for the legislature to delegate to municipal corporations the power to make

by-laws and ordinances, with appropriate sanctions, which, when authorized, have the force, in favor of the municipality and against persons bound thereby, of laws passed by the legislature of the State."

See, also, *Taylor* v. *Carondelet*, 22 Mo. 105:

A city council is "a miniature general assembly," and their authorized ordinances have "the force of laws passed by the legislature of the State."

See, also, 28 Cyc. pp. 347, 348, and cases cited in note 2 on page 348.

Counsel for complainant contend that this court has held that the provisions of the city charter relative to the board of estimates have been construed by this court in harmony with the power of the common council, and cite in support of this contention the cases of *Robinson* v. *City of Detroit*, 107 Mich. 168 (65 N. W. 10), and *Attorney General* v. *City of Detroit*, 113 Mich. 494 (71 N. W. 870). But it must be borne in mind that these cases were decided before the amendment of 1901, which limited the power of the board of estimates, and therefore do not control the instant case.

Our attention is also challenged to *City of Detroit* v. *Blades*, 133 Mich. 249 (94 N. W. 1134); *Kobel* v. *City of Detroit*, 142 Mich. 38 (105 N. W. 79); and *Carney* v. *Whelan*, 147 Mich. 15 (110 N. W. 128). In none of these cases, however, had the council enacted any ordinances with relation to the salaries involved, and it could not be said that the salaries there in question had been fixed by law, which clearly distinguishes those cases from the situation now before us.

With reference to the judges of the recorder's court it is contended that the city of Detroit has no control over their salaries, because that court is a part of the judiciary system of the State, citing the case of *Civil Service Commission* v. *Engel*, 187 Mich. 83 (153 N. W. 358), where it was said by Mr. Justice OSTRANDER, speaking for the court:

"The recorder's court is a court established by the legislature, although its creation is evidenced by the charter of the city, which is a local law. It is a court of record, with jurisdiction to try persons accused of crimes committed within the city. The execution of the criminal laws of the State is a matter of State concern, and in this respect the court possesses a jurisdiction which the electors of the city cannot confer. Power to amend the charter the electors have, but not power to interfere with the jurisdiction of this court, in so far as it relates to matters of State concern. It follows logically that the electors may not, by amendment of the charter, interfere with the incidental powers possessed by the recorder in exercising the jurisdiction which the court possesses, such as the appointment of necessary clerks of the court."

In our opinion, however, the case is not controlling of the question here involved, as it cannot be said that the fixing of the salaries of the judges interferes with the jurisdiction of the court in so far as it relates to matters of State concern, which was the basis of the decision in that case. The statute fixed the salaries of the judges of the recorder's court, and all that the city authorities seek to do is to add to the salaries in the same way that the boards of supervisors in various counties of the State have added to the compensation of the circuit judges.

The salaries of the police justices and the clerk of the police court are fixed by section 764 of the city charter (Charter of City of Detroit, 1904), which further provides that the council may fix the salaries of the assistant clerks in amounts not to exceed the salary of the clerk. It is clear that the charter provisions as to the salaries must govern, and, having been thus fixed by law, provisions in the ordinances which profess to fix the salaries of the police justices and the clerk are invalid, but those as to the assistant clerks are valid and binding.

Ordinance 230A, purporting to fix the compensation

of the officers, clerks, and employees of the Detroit Museum of Art, is void, under the holding of this court in the case of *Detroit Museum of Art* v. *Engel*, 187 Mich. 432 (153 N. W. 700), where we held that the payment by the city of Detroit of the maintenance expenses of the Museum of Art, a private corporation, was a use of public funds for a private purpose, and was illegal under section 12 of article 10 of the Constitution of 1909.

With reference to the board of health and the board of education, the charter makes certain provisions as to the powers of the board of estimates with reference to the salaries of the officers, clerks, and employees of these boards. Section 472 of the charter, with reference to the board of health, provides:

"Excepting as may be otherwise provided by law, or by the ordinances of said city, said board may prescribe the duties and powers of the health officer, and of all inspectors, superintendents, or other subordinates or employees under them, and may direct them, from time to time, in the performance of all their powers and duties. They may determine their number and may fix the compensation they shall receive except as herein provided, but the aggregate amount, to be expended for the compensation of officers, clerks, inspectors, and other subordinates, shall not exceed the amount approved by the board of estimates for that purpose."

Section 604 of the charter (Charter of City of Detroit, 1904), with reference to the board of education, provides in part as follows:

"So much of said estimates as the common council and board of estimates of the city of Detroit shall approve shall be levied and collected the same as other city taxes; and it shall be unlawful for said board of education to pay out or agree to pay out any moneys for any item or items disallowed by said common council or board of estimates."

190 Mich.—14.

It is thus seen that the city charter expressly confers on the board of estimates the power to approve or disapprove the amounts of the salaries of the officers, clerks, and employees of the boards of health and education. The decree of the court below to that effect is therefore correct.

Under the home rule act, being Act No. 279, Pub. Acts 1909, which provided:

"SEC. 5. No city shall have power:   *   *   *

"(d) To change the salary or emoluments of any public official after his election or appointment or during his term of office; nor shall the term of any public official be shortened or extended beyond the period for which he was elected or appointed, unless he resign or be removed for cause"

—the amendment of the charter above set forth, adopted in November, 1914, which made all appointive officers hold at the will of the mayor, could therefore not become effective against any appointive officer unless he resigned. The members of the board of assessors of the city of Detroit tendered their resignations to the mayor, and were thereupon reappointed by the mayor, and since January 15, 1915, have been serving without any fixed term; their term of office being entirely at the will of the mayor, according to the provisions of the amendment to the charter above set forth. This was the situation when the council on April 15, 1915, by Ordinance 219A, fixed the salaries of the members of the board of assessors at $5,000. We are of the opinion that the assessors are entitled to receive compensation at the salaries fixed by the ordinance. It is evident that section 3, art. 16, Constitution of 1909, which provides:

"Salaries of public officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment"

—was intended to apply to such a state of affairs as existed at the time of the adoption of the Constitution,

at which time public officers were only appointed for fixed terms; and to hold that the inhibition would apply to officers whose terms were indefinite would render it impossible to ever increase or decrease the salary of such officers so long as the mayor retained them in office. In the case of *Kearney* v. *Board of State Auditors*, 189 Mich. 666 (155 N. W. 510), the officers had simply resigned their offices, and were reappointed to fill out the balance of the terms, a part of which had already been served. We there said:

"We are well satisfied that by fair implication and manifest intent of those who framed and adopted the constitutional provision under consideration it comprehends in application both officer and term, considered together, where the term is fixed by law, and after his election or appointment for a specified term his relation to that term, in the matter of compensation while an incumbent, cannot be evaded by resignation and reappointment."

Which clearly points out that the officers and terms should be considered together. The assessors were not reappointed to fill out unexpired terms, as in that case, but voluntarily gave up their rights to a fixed and definite term, and were reappointed to an indefinite, uncertain, and unlimited term, which, in our opinion, presents an entirely different situation than was presented in the case of the members of the tax commission.

The court below held that the salary of Mr. George W. Barrus (the only one of the civil service commissioners who was entitled to draw a salary by virtue of his reappointment, the term of his office, considered by the court in *Barrus* v. *Engel*, 186 Mich. 540 [152 N. W. 950], having expired) was payable to him by virtue of the charter amendment with reference to the civil service commission above set forth. By an oversight and error the court below enjoined the payment

of the salary of Mr. Barrus, fixed and determined by Ordinance 225A in accordance with the provisions of the charter amendment. This should be corrected, as the court below properly held that Mr. Barrus was entitled to the salary fixed by the ordinance.

It also follows that the various other ordinances fixing salaries, except as in this opinion indicated, were legal enactments of the council, and the officers, clerks, and employees therein named are entitled to the salaries therein fixed, except as they come under the inhibition of section 3, art. 16, of the Constitution above set forth.

With the modifications herein suggested, the decree of the court below will be affirmed, without costs to either party.

STONE, C. J., and BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.