# CHARLESTON.

STATE EX REL. FRANK ALLEN et al v. E. T. ENGLAND, Attorney General.

Submitted May 4, 1920.   Decided May 18, 1920.

1.   CONSTITUTIONAL LAW—*Legislature May Authorize Supreme Court of Appeals to Control Action of Executive or Administrative Officers.*

The legislature may, within constitutional limitations, enlarge by statute the jurisdiction of this court so as to authorize us to control the action of executive or administrative officers, not including the governor, in all purely ministerial or administrative matters, not involving discretion, but depending on the application to the facts of positive law and correct legal principles.   (p. 509).

2   COUNTIES—*Statute Construed not to Put Time Limit on Bonds Issued to Build and Improve Public Roads.*

Section 26 of chapter 66, Acts 1917, prescribing two methods for raising money for building and improving public roads, one by the issue of bonds, the other by a special road fund levy, properly construed, does not limit the running of the bonds to ten years, the limit prescribed for the continuance of such special road fund levy, the time limit of such bonds being subject only to the provisions of section eight of article ten of the Constitution.   (p. 512).

3.   SAME—*Order of County Court Submitting Proposition to Issue Bonds to Improve Public Roads, Held to Sufficiently Describe the Improvement.*

Where the order of the county court, made pursuant to said section 26, submitting to the voters of the county or any district thereof a proposition to issue bonds for the purpose of improving the public roads recites the report of the engineer, approved by the state road commission, showing the proximate extent and the probable cost of the proposed improvements, with the probable cost of each part of the proposed work, by section or mile, such order is a substantial compliance with the statute requiring the order to set forth the kind and class of work for which the proceeds of the bonds are to be expended notwithstanding the engineer also reports, without recommendation, and the order also recites, the cost per mile for building all of said roads with one or the other of two different kinds of materials, as brick or concrete.   (p. 512).

4   SAME—*Order of County Court Submitting Proposition to Issue
       Bonds to Improve Public Roads Held to Sufficiently Restrict
       Use of Proceeds.* .

    And where such order provides that the proceeds of such
    bonds shall be used in establishing, locating, relocating, grad-
    ing, bridging, constructing and improving generally the roads
    specified in the petition and order, approximately in accordance
    with the plan suggested in the engineer's report, there has
    been substantial compliance with the requirement of the
    statute that the order shall provide that no part of the pro-
    ceeds of the bonds shall be used for any other purpose than
    the improvement of the roads specified therein.   (p. 512).

5,  SAME—*Order of County Court Submitting Proposition to Issue
       Bonds Held to Sufficiently Describe Roads to be Improved.*

    And such is the legal effect of such order notwithstanding
    it is further recited that the description of the roads therein
    is a general outline of the roads proposed to be constructed and
    that the location and extent thereof is to be dependent upon
    and subject to the knowledge secured by further investigation,
    engineer's reports, etc., and as may be approved by the state
    road commission, and further that any road may be changed as
    to location from point to point or from place to place, whereby
    in so doing greater economy of construction may be secured
    or greater good to the citizens of the district may be obtained.
    (p. 515).

    (LYNCH, JUDGE, absent).

Proceeding by the State, on the relation of Frank Allen and
others, to review the action of E. T. England, Attorney General,
in approving a proposed bond issue of the county court of
Marshall County for building and improving certain roads of
Cameron District therein.

                                              *Relief denied.* .


*James T. Miller* and *J. C. Simpson,* for relators.
*James D. Parriott, J. Howard Holt* and *J. B. Allison,* for
respondent.

MILLER, JUDGE:

Relators invoke the jurisdiction of this court, given or sought
to be conferred by section 3 of chapter 57 of the Acts of the
Legislature 1917, to review and control the action of the attorney

general in approving a proposed bond issue of the county court of Marshall County, for building and improving certain roads of Cameron District therein. This statute among other things provides, "that any person in interest, or any taxpayer within said political division, feeling aggrieved by the action of the attorney general in approving or disapproving the validity of such bonds, may within ten days after the date of the last publication of the notice to taxpayers provided for in section two (but not after said ten days) present his petition to the supreme court of appeals or to a judge thereof in vacation, praying that the action of the attorney general in approving or disapproving as aforesaid, be reversed or modified; and if said court, or a judge thereof in vacation, be of opinion to hear and determine the matters in said petition set out, the case shall be proceeded with as in cases of original jurisdiction."

Though not made a point by counsel for the relators or by the attorney general, or by counsel appearing for other citizens and for the county authorities, the power of the legislature in the first place to impose such jurisdiction, and in the second place the jurisdiction of this court by original process as by mandamus to control the action of the attorney general in the matter of his opinion in so approving or disapproving the validity of such bonds, was challenged in council, and it therefore becomes necessary, before proceeding further, to dispose of this question of jurisdiction.

It will be observed that the statute itself is a reference, not to our appellate jurisdiction given by the Constitution and statutes, but is an attempt at least to enlarge or confer original jurisdiction upon us to control the action of the attorney general in such cases. In construing statutes the rule is never to declare an act invalid on constitutional or other grounds unless there be no escape from doing so. We are committed to the proposition that the legislature may in cases of this character enlarge the remedy by mandamus or other original process when no contractual or constitutional rights of persons or property will be thereby invaded. *Boggess* v. *Buxton*, 67 W. Va. 679; *United Fuel Gas Co.* v. *Public Service Commission*, 73 W. Va. 571.

But may we under this act by mandamus or other original writ control the opinion and judgment of the attorney general respecting such bond issues? Manifestly the act itself intended to confer that jurisdiction. In *Boggess* v. *Buxton,* involving the action of election officers, it was decided that mandamus might be given as a remedy, although the duties of such officers might be in some respects judicial in their nature.

Section 19 of chapter 66 of the Acts of 1917, enacted at the same session as the other act, makes the attorney general legal · adviser of the state road commission, created thereby, and imposes upon him the duty to prepare for it all contracts, forms and other documents when required by said commission. It is in evidence here that the form of the order submitting to the voters of said district the proposition to issue bonds was approved by the state road commission and the attorney general before the same was entered or published. It is suggested that the duties imposed upon the attorney general call for the exercise of judgment upon the facts, and discretion in rendering his opinion, not controllable by mandamus; that while he may be compelled to perform his duties, we can not by original process control his opinion and judgment. But do his duties involve purely judicial action or discretion? Manifestly the legislature did not so determine. The purpose was to make his duties supervisory and ministerial, although calling for his opinion and judgment on the law. His duties in this respect are not different from almost any other ministerial or executive officer. But when such officers are called upon to act, the law says they act at their peril. The facts being undisputed, they must act legally; they have no discretion to act unlawfully. *Webb* v. *Ritter,* 60 W. Va, 193, 213, and cases cited; Merrill on Mandamus, § 111. Our statute imposing the duty of approval or disapproval of bonds on the attorney general was likely patterned after a similar statute in Oklahoma. The statute in that state makes the attorney general ex-officio bond commissioner and imposes upon him substantially the same duties as our statute does upon the attorney general of this state, and makes his judgment, not attacked by suit within a prescribed time, final. The supreme court of that state, in construing the statute, held the duties of

the attorney general were executive and administrative only. *State ex rel. Board of Education of Oklahoma City* v. *West, Attorney General,* 29 Okla. 503 ; *In re Submission of Certain Bonds of the City of Tulsa,* 31 Okla. 648. It can not be assumed that if all the preliminary proceedings relating to the issue of road bonds were regular or substantially so, the attorney general could withhold his approval; nor on the other hand would he be suffered to endorse his approval if the provisions of the statute had not been substantially complied with. The act contemplated no such arbitrary or erroneous action, and gave a speedy remedy by appeal to the jurisdiction of this court, in the event of such misuse or abuse of authority. Besides the cases already cited, we have numerous cases where the acts of ministerial and executive officers, though involving judgment on the law, have been controlled, the most recent case being that of *State ex rel. Carter* v. *Board of Ballot Commissioners,* decided at this term but not officially reported.

So the duty remains to us to dispose of the case on its merits. The first proposition urged by the relator is that the act of the county court authorizing bonds to run for twenty-five years instead of ten years violates section 26 of chapter 66 of the Acts of 1917. This is clearly a misconception of the provision of that section. Two methods of providing money for building and improving roads are contemplated by the statute, one by the issue of bonds, the other by a special road fund levy. The statute limits such special levy to ten years, but is silent as to the time such bonds may run, except that it does make all that is done under the act subject to sections seven and eight of article ten of the Constitution, which limits all indebtedness of counties and other municipalities to five per cent of the value of the taxable property therein, and the running of bonds to thirty-four years.

The second point of attack is that the order of the county court submitting the proposition to the voters does not, as section 26 requires, set forth the kind and class of work for which the proceeds of the bonds are to be expended. The statute requires, as preliminary to submitting the proposition, an investigation and report by the county or a special engineer ap-

pointed, of the *probable cost* of the proposed improvement, to be submitted to and approved by the state road commission. An accurate survey and report is not required. When this preliminary *estimate* has been made, the statute requires the county court in its order of submission to set out a summary of said report, the *proximate* extent and *estimated* cost of the proposed road improvement, and the kind and class of work etc. In the report made by the engineer and embodied in the order, it is clearly set forth in accordance with the petition of the voters upon which the proposition was based, the several roads and sections of roads proposed to be improved, the type of road recommended being brick on a concrete foundation for two sections covering three miles thereof, bituminous macadam penetration for another section covering three miles of road, limestone waterbound macadam for another section covering one-fourth mile thereof, and for each type of road itemized estimates of the cost of the different classes of work, that is, for grading, base, surface, drains etc.; and the order specifically provides that the proceeds arising from the sale of the proposed bonds "shall be used in establishing, locating, relocating, grading, bridging, constructing and improving generally and permanently the public roads named in said petition and as outlined in the engineer's report approximately in accordance with the plan there suggested." This provision would seem to answer fully the criticism of the order as to kind and class of work proposed.

But it is said that the order is invalid for two other reasons: first, that it does not provide as the statute says it shall, "that no part of the proceeds of such bonds shall be used for any other purpose than the improvement of the road or roads specified in such order"; second, that the report and order contains an estimate of the engineer of the cost per mile of brick and concrete for the entire work, without recommendation or report as to which of the two should be used, and that the part of the order following the part quoted operates to nullify it or reserve to the county court the power to make use of any of the several kinds of material authorized in the act. It is as follows: "The work shall be done in such manner and plan as may be prescribed by a competent engineer and under the direction of the State

Road Commission, the County Court and the Advisory Committee, as provided by law and set out in said petition: the county court understands and doth so order that the description of the roads herein contained is a general outline of the roads to be constructed from said bond fund and this system as to location and extent is dependent upon and subject to the knowledge secured by further investigation, engineer's reports, etc., and as may be approved by the State Road Commission; and further, any road may be changed as to location from point to point or from place to place when by so doing greater economy of construction is secured or greater good to the citizens of the said district can be obtained." The estimate of all brick or all concrete was for the information of the county court; it was not a recommendation; the specific recommendations were stated in the estimates for the several sections of the road proposed to be improved.

We think the order should have contained the provision that no part of the proceeds of the bonds should be used for any other purpose, and that the statute should be regarded as mandatory. But the question addressed to us is, has there not been substantial compliance with the statute? If there has been, and the public and relators have been protected, should we upset the whole proceeding by ordering the attorney general to disapprove the bonds? If the effect of what is provided is to deprive the county court of power and authority to make any other use of the proceeds of the bonds than that for which they were proposed and authorized, we think we should hold that the law has been substantially observed. The order does say that the proceeds are to be used for the improvement of the roads specified. We have decided what is applicable to the statute we are dealing with here, that where a county court or other authority is authorized to borrow for the purpose of improving certain roads in a certain way, it can not use the funds for improving other roads or improving them in any other way than authorized. *Brown* v. *Preston County Court,* 78 W. Va. 644; *Lawson* v. *County Court of Kanawha County,* 80 W. Va. 612, 621.

However, the part of the statute requiring a limitation in the order on the expenditure of the money is followed by this: "Subject to power and right of the county court to alter or

change the location of any district road so as to obtain a better grade or alignment thereof or to reduce the cost of construction, improvement or maintenance." This provision, it is true, does not relate to the kind or class of work, but only to location, grade, etc., and it is limited to district or Class B roads as distinguished from main or Class A roads, as defined by said chapter 66.

Whether or not the attempted reservation, in view of the particular provision so limiting the use of the money to the particular roads specified in the order, would permit the court to make any changes in the main county roads involved, we need not say; those roads are by the same act placed practically under the supervision of the state road commission, if any state or federal aid is accepted; and certainly the statute allowing changes would be applicable to district roads covered by the order. But it must not be overlooked that the statute requiring the order to limit the use of the proceeds of the bonds to the improvement of the roads authorized has no application to the kind of material, or to the class or kind of work to be employed. Section 23 of the act empowers county courts to improve the main county or district roads with asphaltum, concrete, brick, stone, block or by macadamizing, or other process of equal merit. The proposition submitted was brick, concrete and macadam penetration. This was the material proposed, but if for any reason justifying it, arising after the submission, with the power reserved in the order, and approved by the vote of the people, might not the county court change the material to some other class of material prescribed by the statute? We see nothing in the statute to deny this right. It might result beneficially to the county, and when the right is reserved, as we held in *Lawson* v. *County Court, supra,* the county court has authority to exercise it. If the people did not wish to confer this authority, they had it within their power to vote the proposition down when submitted to them.

For the foregoing reasons we must deny the relief sought.

RITZ, JUDGE (*Concurring in the result*):

I would refuse to grant any relief upon the petition, but for a different reason than that given in the opinion of the majority

of the Court. That the legislature has the authority to impose upon the Attorney General the duty of passing upon the validity of county, municipal and other public bond issues, I do not doubt, but I do deny the power of the legislature to confer upon this Court the jurisdiction to compel him to act in accordance with the views of some one else regardless of his own opinion. It is true, in this case, he is not required to change his opinion, but the Court assumes to have the power to do so, if its opinion should not concur with that of the Attorney General. I have always been taught that the three departments of the government were separate and distinct, and not subject to control one by another, in fact, the Constitution so provides. It was the intention that the executive officers, in the performance of the duties devolving upon them, should be free from dictation by either the legislative or the judicial branch. Those officers are elected by the people upon the theory that they will act independently and bring to the performance of their duties their best efforts in behalf of the public without being controlled by dictation from outside sources. Under the doctrine announced in this case the legislature has the power to confer upon the courts jurisdiction to compel any executive officer to perform his duties in such manner as the judges deem expedient. No longer is the executive an independent branch of the government. The fact that the legislative branch may not exercise the power can make no difference. If it exists, the independence of the executive branch is gone. This is contrary to the spirit of our government, which contemplates that each of the three branches of government should be independent with the power to perform the duties charged upon them respectively, without control or direction from the outside, so long as they act within the limitations prescribed by the fundamental law. I cannot, therefore, agree that the legislature can confer upon this Court the jurisdiction to compel the Attorney General to perform an executive act in a manner contrary to his judgment.

.     *Relief denied.*