# CHARLESTON.

ROYAL GLEN LAND & LUMBER Co. *et al. v.* PUBLIC SERVICE COMMISSION.

Submitted September 6, 1922. Decided September 12, 1922.

PUBLIC SERVICE COMMISSIONS—*Direct Appeal to Supreme Court Does Not Lie from Order of Public Service Commission Granting Hydro-electric Corporation Permission to Erect Dam.*

No appeal directly to the supreme court lies from an order of the public service commission which grants to a corpora-

tion, chartered for the purpose of producing and selling hydro-electric power, a permit to erect a dam for the development of such power on one of the streams of this state in accordance with the provisions of chapter 17 of the acts of 1915, known as the "Water Power Act".

(Decision in *Howell* v. *Public Service Commission*, 78 W. Va. 664, approved.)

Petition in the nature of an original petition by Royal Glen Land & Lumber Company and others to suspend an order of the Public Service Commission.

*Petition dismissed.*

*Emory Tyler, Chas. Ritchie* and *John T. Simms,* for petitioners.

*J. Howard Hundley, A. J. Welton* and *E. L. Judy,* for respondent.

LIVELY, JUDGE:

By this proceeding this court is asked to suspend an order of the Public Service Commission dated March 31, 1922, which awards a permit to the Community Power Company to construct a dam twenty feet in height across the South Branch of the Potomac River, at Royal Glen Gap, about two miles south of the town of Petersburg in Grant County.

The permit was granted under the provisions of chapter 17 of the Acts of 1915 known as the "Water Power Act." The procedure under that act seems to have been strictly complied with by the applicant. The Royal Glen Land and Lumber Company, one of the appellants, appeared before the Public Service Commission and moved a dismissal of the application, and protested against the granting of the permit. A member of the Commission personally inspected the site of the proposed dam and the land and property proposed to be impounded, took voluminous testimony at the towns of Petersburg and Moorefield, both on behalf of the applicant and protestants, and after a full hearing the case was submitted upon testimony, oral argument and briefs of counsel, resulting in the order granting the permit which is

now complained of. A petition for rehearing was filed before the commission by the lumber company and by one John Parks who desired to introduce further testimony, which petition, as well as the application to reopen the hearing of the case for further testimony, was refused by the Commission on the 9th day of April, 1922.

The proposed dam, if constructed, will flood an area of forty acres and will impound 800,000,000 gallons of water, and produce a maximum of about 600 horse power and a minimum of about 200 horse power of electrical energy which will be generated by said dam and the hydro-electric plant and used to furnish light, heat and power to the people of the towns of Petersburg and Moorefield and vicinity. The land company and John Parks have petitioned this court for a suspension of the order granting said permit and have assigned numerous alleged errors committed by the Commission in awarding the permit. It is insisted by counsel for the power company that the petition should be dismissed and the appeal disallowed for the want of jurisdiction in this court to entertain an appeal from an order of this character. If that contention be well founded it would be improper to consider the assignments of error alleged to have been committed by the Commission in arriving at its conclusion to award the permit.

An inspection of the water power act of 1915 will impress the conclusion that one of the designs thereof was that the State should always have control and supervision of the streams which are capable of developing hydraulic, electrical or other power and that full and complete power and supervision in behalf of the State should be exercised by the Public Service Commission. That body is given power to investigate the necessity for the erection of any dam, to inspect and pass upon the fitness thereof, the material, equipment, method of operation and maintenance, in order to fully protect all public and private rights in such water, and especially to protect life, health and property. The safeguarding of life and property is declared in the act to be of first importance, and full power of visitation, supervision

and control is given the Commission to carry out that design. For the use of the State's water power in the production of energy a revenue to the State is provided by the act based upon the gross income derived from the sale of electrical or other energy generated.   The water power belongs to the State; and the permit provided for in the act is simply authority to construct dams for development of hydraulic or hydro-electric power for sale to the public with necessary transmission lines and auxiliary plants.   Preliminary to the granting of this permit a complete and exhaustive investigation is directed to be had, showing the height of the dam proposed, its location, the area to be flooded; a maximum and minimum of the electrical energy to be produced, the lands and property in detail that will be flooded and impounded by the erection of the dam; whether the dam will render inaccessable or more difficult of access, or cause damage, to any agricultural lands, coal, oil, gas, mineral deposits or other natural resources within or adjacent to the contour of the area to be flooded by such dam; the use to be made of the power generated and whether or not the economic value of the natural resources to be damaged or destroyed are greater than the economic value to the people of the State which may be made available by the development; whether the corporation receiving the permit is by its charter authorized to manufacture, supply and sell to the public hydraulic or other electrical energy or power produced by water as a motive force, and if it is such a corporation as is contemplated by the act; whether the public sentiment in the district affected by the construction of the project is favorable thereto; if the dam when constructed according to the plans and specifications will be safe and secure beyond a reasonable doubt; if the development is a local community project for the development of an isolated part of the water power for strictly local purposes, and if it will interfere with the future development of the water power from the stream or streams affected.   It is evident that the legislature intended that in the development of the water power of the State, life, property and the public welfare should be strictly safeguarded and conserved in the

production and use of the latent power in the streams; and as incidental thereto that the State should receive a revenue therefrom. Instead of granting to water power companies a permit or franchise direct by legislative enactment, the law-making body has seen fit to delegate this function to a state agency peculiarly fitted for that purpose. This power so delegated to be exercised after strict investigation and finding of fact is legislative in its character and amounts to nothing more than a grant of a legislative permit or charter, with the right of the grantee to exercise the power of eminent domain only within the limits of the territory designated by the Public Service Commission. Accentuating this theory is the legislative declaration contained in section 41 of the Act, which reads: "Any dam when authorized and erected in accordance with the provisions of this statute shall be considered a dam authorized by the legislature of this State at the particular site upon which the same is located." Whether the act of the Commission in granting a permit under this statute is legislative, judicial or administrative; or whether it is a mixture of these governmental functions is unnecessary to determine in this case. The statute provides for no appeal from an order granting a permit; and the above observations upon the provisions of the statute and the character of the order awarding the permit, are made, as indicative of the reason and intent of the legislature in not providing for some method of review. It may be well to observe that the water power act of 1913, which authorized the board of public works to grant such permits to water power companies, provided for an appeal from the action of the board of public works to the circuit court of the county in which the proposed development was located, and that the act of 1915, now under consideration, and which is an amendment to the act of 1913, but which deals with the entire subject-matter, contains no such provision. Does the right of appeal direct to this court lie from the exercise of such legislative function granted in the water power act? It must be remembered that the right of appeal is purely statutory, and as above set out, such right is not

given in the act. *Gas Co.* v. *Public Service Commission,* 73 W. Va. 571.

In the proceeding to condemn the lands lying within the limits prescribed in the permit, the rights of the property owners affected thereby can be asserted and protected, and it may be that questions may there arise, which were considered by the Commission in awarding the permit, judicial in their character, and which will require judicial determination.

The crucial question is the jurisdiction of this court to review the act of the Public Service Commission, awarding the State's permit to erect dams for the development of the State's water power, by direct appeal. Counsel for protestants (appellants) insist that a direct appeal to this court lies by virtue of section 16 of the Act of 1913, which is the act creating the Public Service Commission and defining its powers and duties; and that the decision of this court in *Howell* v. *Public Service Commission,* 78 W. Va. 664, holding the contrary, should be reviewed and reversed. We have carefully considered the holding in that case, and perceive no good reason for its reversal or modification. It controls this case, and therefore, the petition is dismissed.

*Petition dismissed.*