STATE *ex rel.* HERBERT W. RICHARDSON, *Judge, etc., et al.*

*v.*

THE COUNTY COURT OF KANAWHA COUNTY, *et al.*

(No. 10618)

Submitted September 23, 1953. Decided November 24, 1953.

*Dale G. Casto, George C. Schmidt,* for relators.

*D. Boone Dawson,* for respondents.

GIVEN, JUDGE:

In this original proceeding in mandamus, petitioners, Herbert W. Richardson, Judge of the Domestic Relations Court of Kanawha County, and Thomas D. Robertson, Probation Officer of the Domestic Relations Court of Kanawha County, seek a peremptory writ requiring

defendants, The County Court of Kanawha County, Hubert W. Kelly, President, and Bruce E. Bartlett and S. Grover Smith, Sr., Commissioners of The County Court of Kanawha County, to "correct the budget for the Domestic Relations Court of Kanawha County, for the fiscal year 1953-54, and provide therein the sum of $23,980.00 for salaries for probation officers, clerical and secretarial help and the sum of $2,800.00 to provide for payment of costs of necessary expenses and mileage accounts, in accordance with the order of the Domestic Relations Court of Kanawha County, made and entered on the 26th day of June, 1953, * * * ".

The Domestic Relations Court of Kanawha County was created by Chapter 172, Acts of the Legislature, Regular Session, 1947, and was vested with jurisdiction of proceedings relating to divorce, alimony, adoptions, care and disposition of neglected and delinquent children, juvenile offenses, and other matters of similar nature. Section 8 of the Act provided that the court appoint "probation officers, and such medical, clerical and secretarial assistants as shall enable the court to discharge all of the duties required of it * * * ". Section 9 of the Act provided that the County Court of Kanawha County "shall, through annual levy and appropriations, make provision for the payment for * * * such clerical, secretarial and other official help and expenses as may be required by the court". Section 8 was amended and reenacted by Chapter 148 of the Acts of the 1949 Legislature, Regular Session, and again amended and reenacted by Chapter 188 of the Acts of the 1953 Legislature, Regular Session. The part of Section 8, as amended in 1953, in so far as material here, reads: "* * * The court is authorized and empowered to appoint such additional officers, divorce commissioners, commissioners in chancery, special commissioners, jury commissioners, and probation officers, and such medical, clerical and secretarial assistance as shall enable the court to discharge all the duties required of it under the provision of this act, and the general laws of the state. The judge

may appoint a chief probation officer, assistant probation officers, and necessary medical, clerical, secretarial and other necessary assistants to be paid by the county court. Such appointments shall be made by the judge and the appointees shall serve during the will and pleasure of the judge.

"The chief probation officer shall receive as compensation for his or her services an annual salary of not less than four thousand dollars nor more than six thousand dollars to be determined by the judge. Assistant probation officers and medical assistants shall receive as compensation an annual salary of not less than three thousand nor more than forty-eight hundred dollars to be determined by the judge. Clerical and secretarial assistants shall receive as compensation for his or her services an annual salary of not less than twenty-seven hundred dollars nor more than thirty-six hundred dollars to be determined by the judge. In addition to the annual salary herein provided for the chief probation officer and each assistant probation officer and medical assistants, they shall be reimbursed by the county court by reason of his or her necessary expenses actually incurred in the performance of official duties, including an allowance of seven cents a mile for his or her automobile driven in the performance of official duties. The appointment of the chief probation officer, assistant probation officers, medical and secretarial assistants, when made by the judge, shall be entered on the law order book of the court. A copy of the order of appointment shall be transmitted to the clerk of the county court. Thereupon, the county court shall make provision for payment and shall pay the salaries of the chief probation officer, assistant probation officers, medical, clerical and secretarial assistants as shown by the order of appointment. The annual salaries provided for in said order of appointment shall be paid in equal monthly installments. Expenses and mileage accounts of the chief probation officer, assistant probation officers, and medical assistants shall be itemized and verified and presented to and paid

by the county court, if such accounts are approved by the judge * * * ". The only material differences in the 1953 Amendment and the 1949 Amendment relate to the amount of the salaries of the chief probation officer, assistant probation officers, medical, clerical and secretarial assistants. Those salaries, as fixed by the 1949 Act, were: Chief probation officer, not less than two thousand four hundred dollars, nor more than four thousand eight hundred dollars; assistant probation officers and medical assistants, not less than two thousand dollars, nor more than three thousand dollars each; clerical and secretarial assistants, not less than one thousand eight hundred dollars, nor more than two thousand seven hundred dollars each. Section 9 of the 1947 Act was not attempted to be amended by either the 1949 Act or the 1953 Act.

Acting under authority of the 1953 Act, the Domestic Relations Court of Kanawha County, on June 26, 1953, entered an order fixing the annual salary of the chief probation officer for the fiscal year 1953-1954 at five thousand four hundred dollars; the salaries of three assistant probation officers at four thousand four hundred twenty dollars, three thousand nine hundred sixty dollars, and three thousand three hundred dollars, respectively; and the salaries of two secretaries at three thousand six hundred dollars and three thousand three hundred dollars, respectively. As may be noticed, the amounts of the salaries so fixed were within the respective minimum and maximum limits authorized by the Legislature. In each instance, however, the annual salaries so fixed amounted to a substantial increase over the previous annual salary of the respective officers and employees. The aggregate amount of the salaries, as fixed by the order of the Domestic Relations Court of Kanawha County, for the fiscal year 1953-1954, was twenty-three thousand nine hundred eighty dollars. The order also directed the County Court of Kanawha County to appropriate the sum of two thousand eight hundred dollars for the purpose of paying "the expenses and mileage

accounts of the Chief Probation Officer and Probation Officers incurred in their official duties * * * ". The amount directed to be appropriated for expenses for the fiscal year 1953-1954 was an increase of three hundred dollars over the amount of such expenses for the previous fiscal year.

The County Court of Kanawha County refused to recognize the validity of the order, and refused to include in its "Levy Estimate" for the fiscal year 1953-1954 the amount of twenty-three thousand nine hundred eighty dollars for the payment of such salaries and the sum of two thousand eight hundred dollars for the payment of such expenses. The defendant, however, included in its "Levy Estimate" for that year the amount of twenty-five thousand dollars for payment of all salaries and expenses of officers and employees appointed by the Domestic Relations Court of Kanawha County and, by letter dated August 15, 1953, informed the Domestic Relations Court of Kanawha County that "your budget for the fiscal year has been set by the County Court at $25,000 (Includes travel)". It may be noticed that the salary of the Judge of the Domestic Relations Court of Kanawha County is not involved.

Defendants demurred to the petition filed. The controlling question of law raised by the demurrer relates to the constitutionality of Chapter 188 of the 1953 Act, under which petitioners claim authority in the Domestic Relations Court of Kanawha County to fix the amount of the salaries of the officers and employees mentioned in that Act. The contention of defendants is that the function of fixing the amounts of salaries for the officers and employees is primarily administrative, for legislative determination; and that any enactment of the Legislature which attempts to vest administrative functions in the judicial department of the government is unconstitutional, and void, as being violative of Article V of the Constitution of West Virginia, which reads: "§1. The Legislative, Executive and Judicial Departments shall be

separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."

We are, therefore, necessarily faced with the constitutional question raised. No other question is raised, or appears to us, upon which the case may be decided. See *State* v. *Huber*, 129 W. Va. 198, 40 S. E. 2d 11; *Luella Ice* v. *County Court of Putnam County*, 91 W. Va. 272, 112 S. E. 495; *State ex rel. Dillon* v. *County Court*, 60 W. Va. 339, 55 S. E. 382; *Shephard* v. *Wheeling*, 30 W. Va. 479, 4 S. E. 635. It is uniformly held, in so far as we can find, that it is the duty of courts to uphold the constitutionality of Acts of Legislatures, if possible to do so and, where any real doubt exists as to the constitutionality of an Act, the doubt must be resolved in favor of the validity of the Act. See *State* v. *Huber, supra; Ex Parte McNeeley*, 36 W. Va. 84, 95, 14 S. E. 436; *Bridges* v. *Shallcross*, 6 W. Va. 562, 568. The Constitution represents the sovereign will of the people, and courts must not hesitate when necessary to uphold it. It has been pointed out "that the plain language of article V calls not for construction, but only for obedience". *Hodges* v. *Public Service Commission*, 110 W. Va. 649, 159 S. E. 834.

Constitutions of the several states and commonwealths, and of the federal government, contain provisions which effect a separation of the three departments of government, executive, legislative and judicial. In some of the Constitutions, however, there is no specific provision relating to separation as is found in Article V of our State Constitution. In considering the importance of the provisions relating to the separation of departments of government, the United States Supreme Court, in *Kilbourn* v. *Thompson*, 103 U. S. 168, 26 L. ed. 377, stated: "It is believed to be one of the chief merits of the American system of written constitutional law, that all the

powers entrusted to governments, whether state or national, are divided into the three grand departments of the executive, the legislative and the judicial. That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system, that the persons entrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other * * * ". The view of this Court as to the importance of the separation of the government into three departments is stated in the opinion in *Sims* v. *Fisher,* 125 W. Va. 512, 524, 25 S. E. 2d 216, reading: "In view of these holdings we think it clear that this Court has settled on a policy of strong adherence to the several constitutional provisions relating to the separation of powers, as conferred on the three departments of the State government, and particularly as to the jurisdiction of courts, and the powers they may assume or decline to exercise. Further, that any departure from this strict rule in the past, shall not be permitted to operate as a precedent for additional violations of these provisions now or in the future, under whatever guise such a proposition may be presented. This is as it should be. The Constitution has wisely provided for its amendment, and the way being open therefor, courts are not justified in assuming powers not granted, even though asked to do so by legislative enactment * * * ".

In a number of cases this Court has considered the nature of legislative functions, as differentiated from judicial functions. In *State* v. *Huber, supra,* a statute attempted to vest in certain courts of record power to revoke licenses granted for the sale of nonintoxicating beer. In holding the Act unconstitutional, for the reason

that the function attempted to be vested in the courts was legislative, and in attempting to illustrate differences in legislative and judicial functions, the Court stated: "* * * We are not particularly concerned here with a definition of legislative and executive power, except to distinguish them from judicial power. The question here presented is whether courts of record in this State, which possess only judicial power, may be charged with the duty of exercising legislative or executive power. Briefly stated, legislative power is the power of the law-making bodies to frame and enact laws. This power covers a very wide scope * * * Unquestionably, the power of regulation of public utilities, the licensing of businesses of all kinds, the regulation of such businesses, the general control thereof, including the power of revoking licenses or permits issued in connection therewith, is a legislative power. This power is subject to control by the courts only where, in the exercise thereof, there has been a violation of some State or Federal constitutional provision, limiting the Legislature in its right to perform certain acts in connection with the power it assumes to exercise * * * When we come to a definition of judicial power, we find more difficulty. In fact, it seems impossible to define it. Neither the Federal Constitution, nor the Constitution of West Virginia, attempts to define judicial power. One text writer says: 'Ordinarily judicial power is the power conferred upon courts to duly administer the law.' It is defined by Bouvier as ' * * * the authority vested in the judges; * * * The authority exercised by that department of government which is charged with the declaration of what the law is and its construction so far as it is written law; the power to construe and expound the law as distinguished from the legislative and executive functions.' 2 Watson on the Constitution, 1084 * * * Without attempting to define it, we think this much may be said: It is the power which a regularly constituted court exercises in matters which are brought before it, in the manner prescribed by statute, or established rules of practice of courts, and which

matters do not come within the powers granted to the executive, or vested in the legislative department of the Government. The Legislature may impose duties, judicial in character, upon the courts, but having once imposed these powers it has no right to control the exercise thereof; and that, we think, constitutes judicial power * * * ".

In *Sims* v. *Fisher, supra,* an Act attempted to empower circuit courts to supervise the sale of forfeited and delinquent lands administratively instead of judicially. In holding the Act unconstitutional in that respect, the Court stated: " * * * In this case, the Legislature has required of the circuit courts, and this Court, the exercise of functions not of a judicial nature, and has plainly stated its intent and purpose in that regard. In the same enactment it has required of circuit courts the performance of duties which it terms 'judicial' as distinguished from what it terms 'its capacity as an administrative agency for the sale of state lands.' With all deference to the will of the Legislature, we do not think it possesses the power to require any court to act as an 'administrative agency'; and any court which acts in such capacity violates the plain provisions of our Constitution. We are of the opinion, therefore, that the provisions of Article 4, Chapter 117, Acts 1941, which assumes to require the performance of administrative duties by circuit courts, in connection with the sale of lands for the benefit of the school fund, is plainly unconstitutional".

In *Staud* v. *Sill and See,* 114 W. Va. 208, 171 S. E. 428, the constitutionality of an Act providing for confirmation by circuit courts of sales made under deeds of trust was under attack. In holding the Act unconstitutional, and in expressing the reasons the duties attempted to be vested in circuit courts were considered to be nonjudicial, the Court stated: "* * * The Act provides that in any sale under a deed of trust, other than under a decree, the trustee shall file his petition in the circuit court with his written report of sale and shall pray for confirmation of the sale. In case the judge shall be satisfied that the sale

is regular in all respects and the sale price is reasonably adequate under all the circumstances, he shall confirm the sale. In deciding the question of whether the price is reasonably adequate, the court is directed to consider the appraisement of the property, affidavits pro and con, and all evidence taken upon the inquiry. The trustee shall make no conveyance until the sale is confirmed by the circuit court. The costs of the inquiry are to be paid as other costs of sale. It will be noted that there are no parties to the petition of the trustee. No notice is prescribed except where the sale occurs in the vacation of the court and then the trustee merely proclaims on the day of sale when he will present his petition for confirmation. All trust deeds must be foreclosed by this procedure. It makes no difference whether the creditor, the debtor or anyone else feels or is aggrieved. A hearing and an expenditure of money for court costs is made mandatory. No issue is made up and the trustee is made to pray for the confirmation of the sale. There is no cause of action nor ground of equitable relief required to be alleged and there is nothing in the proceeding that would enable anyone at a later time to plead elsewhere that any rights had been adjudicated by it. Affidavits filed pro and con and all evidence taken are to be considered, but it is not stated who is to be privileged to appear and tender the proof. The circuit court, without a suitor before it, and even in instances where the trustee is asking that the sale be confirmed and there is no complaint on the part of anyone, is vested with power to set aside a sale and order the property re-sold. We think there can be no question but that this chapter does not set up a proceeding which may be described as judicial in any sense. The courts cannot, under our constitution, be vested with original authority and jurisdiction over non-judicial matters * * *".

In *Hodges* v. *Public Service Commission*, 110 W. Va. 649, 159 S. E. 834, an Act vested in the Public Service Commission the power to issue licenses to construct dams, requiring the commission to hold hearings upon application "to weigh from the standpoint of the State as a

whole and the people thereof the advantages and disadvantages arising therefrom before acting upon any application for a license * * *", and provided for an appeal as a matter of right to any party of record, and a trial *de novo* by the Circuit Court of Kanawha County. The Court held the Act unconstitutional and, in a very able opinion by Judge Hatcher, stated: "The local investigation and subsequent determination, by the commission, of the effect of a proposed development from 'the standpoint of the State as a whole and the people thereof' (as required by the act) are clearly legislative in character. *Lbr. Co.* v. *Comm.,* 91 W. Va. 446, 450. 'The question of what the public convenience requires is a political, not a legal one.' *Fall* v. *Sutter Co.,* 21 Cal. 237. 'Whether a certain drainage district should be organized, and what lands should be included in such a district for drainage purposes are legislative questions.' *Funkhouser* v. *Randolph,* 287 Ill. 94. Upon the appeal, it is apparent that the legislature intended the circuit court to try and determine these legislative matters *de novo,* without regard to the findings of the commission. Such a proceeding would plainly traverse both mandates of article V. 'Whether a drainage ditch proposed to be constructed * * * will be conducive to the public health, convenience or welfare, or whether the route thereof is practicable, are questions of governmental or administrative policy, and are not of judicial cognizance, and jurisdiction over them by appeal or otherwise cannot be conferred upon the courts by statute.' *Tyson* v. *Wash. Co.,* 78 Neb. 211, 12 L. R. A. (N. S.) 350. Accord: *Searle* v. *Yenson,* 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257 (see section 11 of note, commencing on page. 267); *Moreau* v. *The Board, etc.,* 68 N. J. L. 480, 482; *Appeal of Spencer,* (Conn.) 61 Atl. 1010, 1013; *Racing Comm.* v. *Ass'n.,* 136 Ky. 173; *Board* v. *Todd,* 97 Md. 247; *State* v. *Johnson, supra; Ass'n.* v. *Comm.,* (N. Y.) 119 N. E. 1027; *Case of Supervisors,* 114 Mass. 247, 251; *In re Co. Commrs.,* 22 Okla. 435; *In re North Milwaukee,* 93 Wis. 616, 623; *Stennerson* v. *Ry.,* 69 Minn. 353, 375; *Thompson* v. *Redington,* 92 Ohio St. 101; *In re Beasley,* 206 Iowa 229,

237; *Anway* v. *R. Co.*, (Mich.) 12 A. L. R. 26; *Peters* v. *U. S.*, 20 Fed. (2d) 741; *Muskrat* v. *U. S.*, 219 U. S. 346; *Keller* v. *Elec. Co.*, 261 U. S. 428."

In *County Court of Raleigh County* v. *Painter*, 123 W. Va. 415, 15 S. E. 2d 396, the statute considered provided that the amounts of salaries to be paid by clerks of circuit courts to deputies and other employees should be fixed by county courts. The Act contained this provision: *"Provided,* That any clerk of a circuit court, feeling that the sum so fixed and determined is inadequate to enable him to properly conduct his office, may appeal to the circuit court of such county, which shall determine and fix a reasonable and just amount for the compensation of his deputies and assistants \* \* \* ". In holding the provision unconstitutional as in violation of Article V of the Constitution, the Court stated: " \* \* \* As we view it, the duty imposed upon county courts in the making of allowances to circuit clerks for expenses incident to the employment of deputies and assistants is not of a judicial nature, and that portion of Chapter 19, Acts 1939, which attempts to impose upon the circuit courts jurisdiction of the same, in the nature of an appeal and with the power to determine and fix a reasonable and just amount for compensation of deputies and assistants, contravenes Article V of the Constitution and is therefore invalid." The holding followed that of *Baker* v. *County Court of Tyler County*, 112 W. Va. 406, 164 S. E. 515, wherein a similar Act, involving salaries and expenses of sheriffs' deputies, was declared unconstitutional. We perceive no substantial difference in the nature of the functions involved in these two cases and those involved in the instant case.

Other cases decided by this Court illustrating difficulties arising in consideration of the question involved are: *Kenny* v. *County Court of Webster County*, 124 W. Va. 519, 21 S. E. 2d 385; *Spurdone* v. *Shaw*, 114 W. Va. 191, 171 S. E. 411; *Danielley* v. *City of Princeton*, 113 W. Va. 252, 167 S. E. 620; *Locke* v. *County Court of Raleigh County*, 111 W. Va. 156, 161 S. E. 6; *State ex rel.*

*Allen* v. *England,* 86 W. Va. 508, 103 S. E. 400; *Sutherland* v. *Miller,* 79 W. Va. 796, 91 S. E. 993; *Anderson* v. *Bowen,* 78 W. Va. 559, 89 S. E. 677; *State ex rel. Miller* v. *Buchanan,* 24 W. Va. 362. See also *City of Wheeling* v. *Casey Co.,* 85 F. 2d 922; 16 C. J. S., Constitutional Law, Sections 105, 139, 144 and 164. Numerous cases and authorities not mentioned in this opinion, wherein the separation of departments of government is discussed, are cited in "Judicial Review of Administrative Action in West Virginia—a Study in Separation of Powers", 44 West Virginia Law Quarterly 270. In that article the holding in the *Hodges* case is severely criticised. The holding is, however, ably defended in an article found in 45 West Virginia Law Quarterly 291, titled "The Hodges Case and Beyond". Whatever the merit of the valuable discussions found in these articles, the position of this Court has been definitely "settled on a policy of strong adherence to the several constitutional provisions relating to the separation of powers", as pointed out in language of Judge Fox in the opinion in *Sims* v. *Fisher,* quoted above. Even the author of the article criticising the *Hodges* case apparently agrees with the conclusion reached by this Court in *Baker* v. *County Court of Tyler County, supra.*

It seems apparent, and is pointed out in numerous decisions of this Court, that there can not be, in the very nature of things, any exact delineation of judicial, legislative or executive powers. There must be some mingling or overlapping. The overall purpose of the Constitution is to create a workable form of government, and to deny to any one of the three departments any function actually necessary for the operation of that department would effectively render the form of government impotent. The Constitution itself in effect provides exceptions to the separation of departments made by Article V. For example, county courts are vested with certain judicial powers and "such other duties, not of a judicial nature, as may be prescribed by law", and Article V itself provides that justices of the peace may serve in

the Legislature. See *Poling* v. *County Court of Barbour County,* 116 W. Va. 580, 584, 182 S. E. 778. This Court, however, is not warranted in making exceptions thereto merely because the Founders thought it wise to do so in certain circumstances. Neither is it within the province of this Court to declare that matters primarily legislative, not inherent in the functioning of the judicial department,may be exercised by the judicial department.

As above pointed out, we view the prior decisions of this Court as holding the functions of government relating to the fixing of salaries of probation officers and other appointees involved in this proceeding as being primarily non-judicial. These holdings, we believe, are in accord with the majority of cases in other jurisdictions. See *State ex rel. Board of Regents of Normal Schools* v. *Zimmerman,* 183 Wis. 132, 197 N. W. 823; *Commonwealth ex rel. Boyle* v. *Wert,* 282 Pa. 575, 128 A. 484; *Sheets* v. *Armstrong,* 307 Pa. 385, 161 A. 359; *Jefferson Davis County* v. *Berry,* 152 Miss. 578, 120 S. 572; *Davis* v. *Jasper County,* 318 Mo. 248, 300 S. W. 493; *Plowden* v. *Beattie,* 185 S. C. 229, 193 S. E. 651; *Burton* v. *City of Detroit,* 190 Mich. 195, 156 N. W. 453; *In re Salary of Superior Court Judges,* 82 Wash. 623, 144 P. 929; 16 C. J. S., Constitution Law, Sections 139, 149.

In holding the Act of 1953 unconstitutional in the respect indicated, we have not failed to give consideration to the fact that the Act purports to vest power in the Domestic Relations Court of Kanawha County to fix salaries only within minimum and maximum limits. That fact, however, amounts only to a limitation upon the legislative function attempted to be delegated to that court. It does not change the nature of the function from legislative to judicial.

We make it clear, however, that only that part of the Act under consideration which relates to the fixing of salaries by the Domestic Relations Court of Kanawha County is held unconstitutional. The Legislature intended to create the Domestic Relations Court of Kanawha

County and to vest it with jurisdiction over the subject matters indicated, and to make it a workable, effective part of the judicial system. The mere fixing of salaries by that court is not essential to the proper functioning of the court. That court will function as intended by the Legislature whether salaries of the officers involved are fixed by that court or by some other properly constituted authority. With that nonessential provision eliminated, a workable Act remains. The unconstitutional provision is clearly severable from other parts of the Act. *Hodges* v. *Public Service Commission, supra.* Moreover, Section 9 of the Act, mentioned in the second paragraph of this opinion, clearly requires the County Court of Kanawha County to "through annual levy and appropriations, make provision for the payment for all such * * * clerical, secretarial and other official help and expenses as may be required by the court". There can be no question, under our decisions, that the county court is required to adhere to the will of the Legislature, as expressed in its enactments, in the performance of such duties. See *County Court of Mercer County* v. *Alderson,* 124 W. Va. 781, 22 S. E. 2d 539; *Kenny* v. *County Court of Webster County,* 124 W. Va. 519, 21 S. E. 2d 385; *State Road Commission* v. *County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815; *State ex rel. Plant* v. *Board of Commissioners of Ohio County,* 80 W. Va. 506, 92 S. E. 747; *State ex rel. Dillon* v. *County Court,* 60 W. Va. 339, 55 S. E. 382. In these circumstances, we perceive no substantial reason why the county court should not "through annual levy and appropriations", and by proper apportionment among the several officers and employees, provide for the payment and pay salaries to all such officers and employees. Should that not be done, or should the action of the county court in determining such matters be proved arbitrary or capricious, petitioners are not without a sufficient remedy. See *State ex rel. Ward* v. *County Court of Raleigh County,* 138 W. Va. 579, 76 S. E. 2d 579; *Hodges* v. *Public Service Commission, supra.* No question of arbitrariness or

capriciousness on the part of the county court is involved in the instant proceeding.

There remains for consideration the question relating to the "expenses and mileage accounts" of the probation and medical officers. As to that question, we think no constitutional problem necessarily arises. The statute quoted clearly authorizes and directs the payment of such expenses, and the only limit placed by the Legislature upon the amount to be paid for such expenses is that they shall be "necessary expenses actually incurred in the performance of official duties * * * ". No doubt estimates furnished to the county court by the Domestic Relations Court of Kanawha County prove helpful in the ordinary transaction of the business of the county court, but that can not override the legislative command that all such expenses be paid. Also, "Levy Estimates" made by the county court may be proper and essential to the proper supervision of the fiscal affairs of the county, but neither can such "Levy Estimates" override the legislative command. All expenses "necessary" are to be paid whether or not included in the budget and levy. *State ex rel. Ward* v. *County Court of Raleigh County, supra; State ex rel. Sprague* v. *County Court of Greenbrier County,* 93 W. Va. 481, 117 S. E. 135.

From the conclusions reached, it necessarily follows that the peremptory writ prayed for must be denied.

*Writ denied.*