Hiram GAINES, Presiding Judge, et al., County Judges, County Court, Bollinger County, Plaintiffs-Petitioners,

v.

Honorable Stanley A. GRIMM and Honorable A. J. Seier, Circuit Judges, Defendants-Respondents.

No. 60073.

Supreme Court of Missouri, en banc.

July 11, 1977.

Rehearing Denied Sept. 12, 1977.

---

Albert C. Lowes, Jackson, for plaintiffs-petitioners.

Jack L. Oliver, Cape Girardeau, for defendants-respondents.

Shulamith Simon, St. Louis, for amicus curiae.

DONNELLY, Judge.

On February 10, 1977, the Circuit Judges of the 32nd Judicial Circuit issued an order directed to the County Court Judges of Bollinger County authorizing the Sheriff of Bollinger County to appoint five full-time deputy sheriffs and one part-time deputy sheriff and setting their salaries.

On February 28, 1977, the County Court Judges met in regular session and rejected the directions of the Circuit Judges.

On March 1, 1977, the Circuit Judges issued an order ordering the clerk of Bollinger County to issue warrants for payment of wages pursuant to the order of February 10, 1977. They further ordered the County Court Judges to convene and to order the County Clerk to make such payments.

On March 4, 1977, the County Court Judges voted to refuse to obey the order of the Circuit Judges.

On March 7, 1977, the Circuit Judges issued an order to the County Court Judges ordering them to show cause why they should not be held in contempt of court.

On March 8, 1977, the County Court Judges filed a "Petition for Review" in this Court and this Court issued its Order granting the Circuit Judges until March 14, 1977, to file responsive pleadings and staying any further action by the Circuit Judges against the County Court Judges.

On March 14, 1977, the Circuit Judges filed, with other pleadings, a Motion to Dismiss.

On April 11, 1977, the Motion to Dismiss was ordered taken with the case.

On May 17, 1977, the cause was argued and submitted to the Court for decision.

In *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99, 101, 102 (banc 1970), this Court, cognizant of "the fundamental nature and function of the judicial department of government" and intent upon preserving "the powers which it possesses to carry out such function", declared:

"We are of the opinion that within the inherent power of the Juvenile Court of St. Louis County, subject to the supervisory control of the Circuit Court of St. Louis County (Art. V, §§ 4, 15 and 28, Const. of Mo., 1945, V.A.M.S.; § 478.063, RSMo 1959, V.A.M.S.; and *State ex rel. MacNish v. Landwehr,* 332 Mo. 622, 60 S.W.2d 4), is the authority to select and appoint employees reasonably necessary to carry out its functions of care, discipline, detention and protection of children who come within its jurisdiction, and to fix their compensation. In order that the Court may administer justice under the Juvenile Code, it is essential that it control the employees who assist it.

"If, after the Juvenile Court, acting under the supervisory control of the Circuit Court of St. Louis County, determines its needs as to personnel and fixes compensation, the County Council deems such action to be unreasonable, the County Council may file a petition for review and final determination of such question in this Court, which has final superintending control over the Circuit Court of St. Louis County and its Juvenile Court. Article V, § 4, Const. of Mo. 1945, V.A. M.S. Necessarily, in order not to interfere with operations of the Juvenile

Court, such petition must be filed without unnecessary delay. In the absence of a determination, pursuant to such petition for review, that the action of the Juvenile Court is unreasonable, its order with respect to the personnel reasonably needed and their compensation will be final, and under such circumstances mandamus will lie, if necessary, to compel payment."

The County Court Judges filed their "Petition for Review" in reliance upon the authority of *Weinstein,* supra. Their reliance on *Weinstein* is misplaced. The Circuit Judges do not assert that they have acted in this case in order that they may carry out the judicial function. They contend their authority lies in § 57.250, RSMo 1969, which reads as follows:

"The sheriff in counties of the third and fourth classes shall be entitled to such number of deputies and assistants, to be appointed by such official, with the approval of the judge of the circuit court, as such judge shall deem necessary for the prompt and proper discharge of his duties relative to the enforcement of the criminal law of this state. The judge of the circuit court, in his order permitting the sheriff to appoint deputies or assistants, shall fix the compensation of such deputies or assistants. The circuit judge shall annually, and oftener if necessary, review his order fixing the number and compensation of the deputies and assistants and in setting such number and compensation shall have due regard for the financial condition of the county. Each such order shall be entered of record and a certified copy thereof shall be filed in the office of the county clerk. The sheriff may at any time discharge any deputy or assistant and may regulate the time of his or her employment."

It must be understood that the petition *for review which originated in Weinstein* was based on a doctrine of inherent power and was for the unique purpose of providing a method of resolving disputes where the ability and capacity of courts to function is at stake. It was not intended for use in a dispute between a sheriff and a county court.

Accordingly, the Motion to Dismiss filed by the Circuit Judges is sustained and the cause dismissed.

BARDGETT, HENLEY and RENDLEN, JJ., concur.

FINCH, J., concurs in separate concurring opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

MORGAN, C. J., not participating.

FINCH, Judge, concurring.

I concur in the principal opinion. It makes what I consider to be the correct disposition of the "Petition for Review" filed by petitioners. In *State ex rel. Weinstein v. St. Louis County,* 451 S.W.2d 99 (Mo. banc 1970), we fashioned a remedy by way of a "Petition for Review" to permit resolution of disputes concerning expenditures ordered under the court's inherent power to do those things necessary to enable the courts to function and perform their constitutional mandate. We were considering in that case situations wherein the action taken involved expenditures which were a part of the court's budget for its activities. That is not true in this instance. Here, the dispute concerns employees in the executive branch of the government and was taken pursuant to statute, not inherent power of the courts. The "Weinstein" remedy is not applicable.

However, there are questions posed by this most unfortunate controversy which are not before us for decision in this case which may arise in the future. I address them briefly.

It is to be noted that prior to the filing of the "Petition for Review" in this court an order to show cause why the county court judges should not be held in contempt of court was issued. It is at least possible that dismissal of the petition herein may result in a continuation of the contempt proceedings. I have reservations as to the propriety of utilizing that method of enforcing the orders of February 10, 1977, and March 1,

1977, when other procedures are available. See *State ex rel. Weinstein v. St. Louis County, supra.* This is particularly true if the action of the circuit judges in approving the appointment of deputy sheriffs and fixing their compensation is an administrative rather than a judicial act. I recognize that *Pogue v. Swink*, 365 Mo. 503, 284 S.W.2d 868 (1955), held that a circuit judge's action in approving appointment of a deputy circuit clerk and approving her salary was a judicial act but, in my view, that holding is debatable. In my judgment this court, when the issue is presented in an appropriate proceeding, should review this part of the decision in *Swink.*

In his dissenting opinion, Judge Seiler expresses the view that the judges, when acting pursuant to § 57.250, RSMo 1969, were acting in a judicial capacity, but he so concludes on the basis that if they were not so acting, the statute would be unconstitutional under Art. II, § 1, Mo.Const. A more plausible case can be made for concluding that the act of the judges in approving the number of deputy sheriffs and their salaries was not a judicial act but was an administrative act, something the county court does in the case of other non-judicial department employees and would have done with reference to the sheriff's department in the absence of § 57.250.

If, when presented, it is determined that a circuit judge acts in an administrative rather than a judicial capacity when he approves the appointment of deputy sheriffs and fixes their compensation pursuant to § 57.250, RSMo 1969, then the question arises as to whether the assignment of such duties relating to appointment of and compensation for persons in the executive branch of government may contravene the provisions of Mo.Const. art. II, § 1. That is the section which provides for separation of powers between the legislative, executive and judicial departments and prohibits any department from exercising powers properly belonging to another department unless expressly directed or permitted by constitutional provision. *State ex rel. Richardson v. County Court of Kanawha County*, 138 W.Va. 885, 78 S.E.2d 569 (1953), cited in

Judge Seiler's opinion, is persuasive authority that § 57.250 may be unconstitutional.

SEILER, Judge, dissenting.

As the principal opinion points out, the petition for review device resorted to in *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99 (Mo. banc 1970) was based on a doctrine of inherent power of the court to carry out its functions and it follows that the county judges in the case before us have selected an inappropriate title for their pleading when they denominated it a "petition for review". But we are not inflexibly constrained by the title of the petition. We can look at the allegations for what they actually set forth, even if the parties have denominated the petition erroneously. ". . . The case is whatever the pleadings and the facts make it, regardless of what name plaintiff gave it." *W. A. Ross Const. Co. v. Chiles*, 344 Mo. 1084, 130 S.W.2d 524, 528 (1939). " '. . . [T]he character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader' . . ." *McClellan v. Highland Sales and Investment Co.*, 426 S.W.2d 74, 77 (Mo.1967).

So viewed, I do not believe the matter can be disposed of on the basis that the petition for review device is not to be used in a dispute between a sheriff and a county court. What we have here is more a dispute between the circuit judges and the county court than it is between the county court and the sheriff, who is not even a party to the litigation. Both plaintiffs and defendants rely on § 57.250 as justifying their positions. All we have before us are the pleadings, affidavits and exhibits.

Taking the allegations of the petition as true (and, of course, we have no right to do otherwise in determining the sufficiency of the petition), the claim of the county judges is that the circuit judges have authorized the employment of three additional deputies for the sheriff when the county does not have the money to pay for them; that in making their order the circuit judges

failed to have "due regard for the financial condition of the county" as required by § 57.250; that the salaries, social security, and mileage for the additional deputies would amount to approximately $20,000, which can be obtained only by reducing other budgeted items in the general revenue fund; that the circuit judges failed to consider the funds available to the county or the commitments by the county for the same.

I do not know who is correct on the facts in this dispute and I believe that responsible public officials should have been able to resolve a fiscal disagreement of this sort without resort to expensive litigation, but since they have not, I think we should appoint a special master to take evidence and make findings of fact on the issue of whether in authorizing three additional deputies and setting their salaries at approximately $20,000, the defendants had due regard for the financial condition of Bollinger county.

I believe the words "due regard" were inserted in the statute for a purpose and that the circuit judges cannot act in disregard thereof, if such be the fact. The circuit judges are part of the judicial system and when they act they act judicially. It would be a violation of the distribution of powers as set forth in Art. II, § 1 of the 1945 Missouri Constitution for them to act in a legislative or executive capacity.

Article II, § 1 prohibits one department from exercising any power belonging to another, "except in the instances in this constitution expressly directed or permitted." Art. VI, § 7 provides that the county court "shall manage all county business as prescribed by law, and keep an accurate record of its proceedings." I find nothing in the constitution which authorizes the judiciary to manage county business and whatever the circuit judges do as to setting the number of sheriff's deputies and their salaries must be viewed as being done judicially, in my opinion, if it is to be constitutional.

While I do not find a Missouri case in point, in *State ex rel. Richardson v. County Court of Kanawha County,* 138 W.Va. 885, 78 S.E.2d 569 (1953), the court had under consideration the constitutionality of a statute which authorized a trial court to fix the salaries of the chief probation officer and various assistants and clerks within certain limits, with the same to be paid by the county court. The statute was held unconstitutional, as violating the separation of powers provisions of the West Virginia constitution, the court holding that the fixing of salaries of probation officers and other appointees was primarily nonjudicial. Under this view, of course, § 57.250, which includes fixing the number of appointees as well as fixing their salaries, would be unconstitutional. However, the general rule is that if a statute is subject to two constructions, one constitutional and the other unconstitutional, courts should adopt the former and it seems to me that the "due regard" portion of § 57.250, previously discussed, makes it possible to say that the circuit judges are acting judicially, not administratively.

The county court is responsible for the fiscal affairs of the county, both by constitutional and statutory provision. An examination of Chapters 46–67 of the 1969 Revised Statutes pertaining to county government shows that the county court, not the circuit judges, have charge of county finances and are responsible for maintaining a balanced budget. Necessarily, therefore, the provisions of § 57.250 that the circuit judges in fixing the number and compensation of deputies "shall have due regard for the financial condition of the county" mean that the order of the circuit judges cannot be immune to challenge by the county court. Otherwise, the circuit judges could order any number of deputies at whatever salaries they see fit, regardless of the financial condition of the county. This could nullify the efforts of the county court to live within the income of the county.

If we accept what the county judges say, there is no claim being made that law enforcement would otherwise suffer (in fact, the county judges say that one of the circuit judges stated to them that law enforce-

**16**

ment in Bollinger county was the best it had been in years and was the best available among surrounding counties), the county is already up to its maximum tax levy, the budget which the county court proposed for the sheriff's office was substantially the same as the amount on which the sheriff's office had operated for the past several years, and to give $20,000 additional to the sheriff meant the county court would have to take money from either the county roads and bridges, ambulance service, or the county landfill project, which the county judges did not believe was warranted.

On the other hand, if we accept what the defendants say, offenses and arrests are climbing in Bollinger county, the amount of money authorized the sheriff by the county court is less than in comparable surrounding counties, the circuit judges assure us that they did have "due regard for the financial condition" of the county, and although the circuit judges attempted to meet with the county judges and arrive at a mutually satisfactory figure, the county judges were unwilling to talk.

If the circuit judges are acting in a judicial capacity in what they are attempting to do here, as I believe to be the case for reasons stated above, then under Art. V., § 4 of the constitution, this court or the court of appeals has general superintending control over the actions of the defendants as here challenged and we should ascertain the facts and dispose of the case on the merits.

For these reasons, I respectfully dissent.